We'll now move to Appeal 21-1742, Trinia Jones v. Scott Kuschell. We're going to hear first from the appellant, and I'll recognize Mr. Alfonso. Thank you. Good morning, Your Honor. You can take your mask off, thank you. May it please the Court. If they didn't get there soon, I'll probably be in a casket. These are the words that Rekia Jones frantically related to the police dispatch during the early morning hours of New Year's Day of 2017. As Appellant Page County Sheriff's Deputy Scott Kuschell rushed to the scene, Rekia's brother Trevon Johnson continued to severely batter his sister. He had already ransacked the interior of the family's home. He was reportedly threatening all others present with knives. Yet that nightmare scenario has now been transformed by the decision of the District Court. Whereas on the day of the incident, Deputy Kuschell arrived on scene to encounter a distraught pregnant victim desperately pleading for the removal of her 6'6 brother who had recently ripped the braids from her head. Per the District Court's opinion, Trevon Johnson has now somehow been rehabilitated by judicial caveat into what is described as a docile subject with a calm victim. That disconnect between District Court's characterization of facts and what was reported at the time only goes to highlight that the District Court's opinion was factually flawed. More importantly, however, the District Court's decision as a result was legally erroneous as well. As has been outlined in brief and as I'll argue here today, the District Court erred in at least two important ways. First, the Court adopted an overly generalized view of the testimony given by the side party's witnesses. Second, because of that overly generalized view and a failure to look into the specifics of the case, the Court was able to draw false equivalencies between the case at the bar and those it cited in support of its decision on summary judgment. Now, taking a step back, as this Court knows, the doctrine of qualified immunity shields law enforcement officials not only from civil liability in general, but from trial itself. Therefore, allowing a case to erroneously go to trial destroys the doctrine completely. The concept, though, we still allow qualified immunity to be raised at trial. It may be the determination that there's a factual issue that would preclude a determination at an interstitial point and that later on the District Court could enter its determination of qualified immunity after certain factual findings are made, correct? That is correct, Judge. But as the Court knows, the doctrine of qualified immunity is a presumed immunity, and therefore it's the plaintiff's burden to prove at the summary judgment stage at least that a constitutional right was violated and that it was clear under the circumstances that the alleged unlawful activity occurred. Now, as to the first basis for reversing the District Court's decision, in the context of qualified immunity, situations matter. As was decided by the Supreme Court's 2011 decision in Ashcroft et al. v. Kidd, courts throughout the U.S. are not to define clearly established at a high level of generality. The Supreme Court's 2001 decision in Saucier v. Katz directs that all courts must determine whether it would be clear to every officer that the conduct was clearly unlawful in the specific circumstances he confronted. Mr. Alfonso, let me ask you this. Do you agree with me that as a legal matter, for there to be collateral order doctrine review here, you know, interlocutory review that way, that what we have to do is we have to take the facts, look at them at the light most favorable to the plaintiff here as the nonmoving party, and then hold them constant and then evaluate whether there's a legal basis for qualified immunity. Is that descriptively accurate in your view? That is descriptively accurate, Judge. However, in this case... Okay. Can I ask you about two facts then? Certainly. Okay. So, Rekia Jones is the sister, correct? Mr. Johnson's sister? Correct. Okay. I believe that she has testified that her brother was no longer armed, either at the top of the stairs or when coming down. That's the first fact. And then the second one is that Mr. Johnson's brother, Robert Peltz, has testified that he never spoke to Officer Cushel. Officer Cushel, of course, has a different account. So, if we just take those two facts, there's others, but let's take those two and hold them constant, okay? Not change them. How's Officer Cushel entitled to qualified immunity? Because whether or not Trevon was armed at the time, while it does matter in a 20-20 hindsight basis type of decision, what matters here is what Cushel was informed of at the time. And at the time, he had conflicting testimony and unclear testimony from the witnesses on the scene. Cushel did not have a clear indication that Trevon Johnson was not armed. Okay, but all you're doing with that, you can push back on this, all you're doing with that is taking Officer Cushel's version of events to inform his mental state, okay? But there are other witnesses who say it didn't go down that way. So, what the courts have told us to do, especially the Supreme Court's decision, is to look at the situation that the officer is confronted by. But he's not the only one that saw the situation, right? It's not just him, right? There are witnesses there. This is correct, but at the same time, it depends on what was being told to the officer at the scene, and that informs our decision as to how he reacted to what he was shown. Right, so if Rekia said, my brother is not armed, okay, how? Well, then you'd have an individual coming down the steps not armed. Well, that's not what she told Officer Cushel at the time, Judge. Well, doesn't that point to a dispute of fact that's genuine and material? Well, Rekia has testified at deposition that it was her belief at the time that Cushel entered that he was not armed. That was never communicated to Deputy Cushel, and that fact is not in dispute, the fact of the fact that it was never communicated to Cushel. I thought she claimed to have told him that. No. Well, let's see what your – do you think your adversary is going to agree with that? I believe so, based upon the record, Judge. Okay, we'll see. As I was saying, based upon the specific circumstances that were presented to Deputy Cushel, the defendant was either – or the decedent was either tripping or lunging towards him at the time he opened fire. And there is where the district court departed from the record of recorded facts in this case. The district court found that he was uncontrovertibly in the process of surrender, at least for purposes of its comparison with the case law here. However, the specifics in this case show that it wasn't clear at the time, and it wasn't clear to this day. On the one hand, we do know that the brother, Robert Pelps, did surrender. We know that he appeared at the top of the stairs calmly, that Officer Cushel gave him instructions to come downstairs without firing on him, and that once he was downstairs, Cushel began to pat him down. We know from Rekia's testimony that Trevon Johnson was not clearly in the process of surrender. We know that because when Trevon appeared at the top of the staircase, Rekia herself testifies that he began to trip. And it was at that time that Cushel, based upon his testimony, perceived what he believed to be a football-esque tackle. Whether or not it's a trip or a tackle, judges, is immaterial here. It's the fact of the matter that Trevon Johnson made a sudden unexpected movement in close proximity to an officer of the law, who was patting down one person and trying to protect another. As argued in brief, a close reading of the record establishes that Trevon Johnson's intentions at the time were not knowable to Detective Cushel. This fact is highlighted by the parties' agreement that a silver marble-based trophy was either thrown or knocked over as Trevon tripped. Counsel, do you see any disagreements in this record between the parties? I do see the disagreements in the record between the parties' characterizations of the evidence and then the evidence itself. Our assertion here is that the district court failed to consider the actual evidence itself and instead relied solely upon characterizations. By characterizations, do you mean testimony? What I mean is an interpretation of the facts as they were reported in the record. Would you like to reserve the rest of your time? Yes, Judge. Thank you. Thank you, Mr. Alfonso. We'll now move to an argument from the appellee. We'll go to Mr. Rogers. May it please the court. You can take your mask off now. Thank you. May it please the court. Yes, sir. We stand here seeking the court's affirmation of Judge Gottschall's detailed and thorough evaluation of the circumstances and her decision to deny Deputy Cushel's claim that he's entitled to qualified immunity here. Based upon the facts that were described, I think it's important to relate what occurred here. This event occurred on January 1st of 2017 after the Johnson-Jones family had returned from church and a dispute occurred between 17-year-old minor Trevon Johnson and his 23-year-old older sister who was visiting from out of town. They got into a verbal dispute. It escalated beyond a verbal dispute. And largely, Rekia was upset because in part of that dispute, her braids were pulled out or some of her braids had been pulled out, which she had recently gotten done, and she was upset. That's reiterated in her call to 911. She repeatedly talks about her braids. Trevon Johnson, present in the home, was the grandmother, the grandfather. The grandfather was downstairs with Rekia. Trevon Johnson's upstairs with the grandmother and mother, Trinia Jones. When Officer Cushel arrives to the home, the door is answered by Mr. Bradley, the grandfather, with Officer Cushel's gun drawn. He comes into the home. The grandfather tells him that they are no longer in dispute, and it's plainly apparent because Rekia is downstairs and everyone is identifying that Trevon is upstairs with his grandmother. To the court's question, Rekia was asked by Deputy Cushel, where is he? Is he armed? And Rekia, quote, answered, I said, no, he's upstairs with my grandmother. At that point in time, Deputy Cushel was at the bottom of the stairway. Rekia is right there with him. She is upset and animated because she, again, her braids were pulled out. She wants her brother to be addressed by the officer and arrested. Officer Cushel. Mr. Rogers, I want you to continue, okay, but I want to ask you one question. Presumably that's why in your brief you wrote, quote, Rekia informed Deputy Cushel that Trevon was upstairs and was not armed, citing ECF number 64 at paragraph 16, right? Correct, Your Honor. Okay. Do you know off the top of your head what's ECF 64? What's the document? I believe it's the discovery deposition, but I'm not certain. Okay. So you don't agree with the representation that Rekia never said a word about her brother being not armed? I disagree vehemently with that. And I think it's important to note while counsel attempts to argue that this was an escalated situation, I think it was plainly clear that Trevon was upstairs with his grandmother. Rekia was downstairs with the officer and the grandfather. The grandfather had opened the door. There was no dispute going on at the time. Mr. Rogers, you and Mr. Alfonso both know this record better than anyone because you did discovery and took it. Can you give any kind of an estimate between the time that the officer arrived and the time the shooting took place? And it can be a range if that's necessary. I believe it is described differently in the record, but it ranges from about as early as 60 seconds to probably several minutes is about the range. And when we say several, do we mean more than five but less than ten? I believe less than five. Less than five. Thank you very much. I think that's a fair representation of the different descriptions. Thank you. But importantly, the dispute had ended. Officer Cushel calls Trevon down the stairs, and first who comes down is his brother, Robert Pelts. Thereafter, Trevon, surrendering to the officer, comes down the stairs and, viewing the facts, in a light most favorable to the plaintiff, is described as walking slowly with his hands raised, palms forward. He has no weapon. He's unarmed. There's no description whatsoever of any threatening act toward Deputy Cushel. Mr. Rogers, if I asked you what are the two most contested facts, I know you're going to say, well, there's a lot more than two. But if you had to pick two, what are the most material two contested facts? Sure. Deputy Cushel makes the allegation that Trevon Johnson, he perceived Trevon Johnson to have had a knife that he describes vividly at, I believe, about three and a half to four inches, a half inch wide, dark gray in color that could be a box cutter, an ice pick, or a knife. That's his description. It's unequivocally undisputed that there's no weapon whatsoever found with Trevon after the shooting or in the vicinity. And that's relevant because the court has to determine through objective evidence how reasonable his assertion that Trevon was armed is. And it's absolutely unreasonable because there's no weapon found whatsoever. Officer, Deputy Cushel claims that a trophy was found, a small child's trophy, as you would receive from a soccer game or a baseball game, was found at the bottom of the stairs. Well, I've been to the scene of this occurrence. That family had a shelf next to the stairway with children's trophies on it, well below where Trevon was found, shot to death, high up on the stairs with his feet toward the bottom of the stairs and his head toward the top of the stairs with bullet wounds in his side, his rear buttock, and leg. There's no factual scenario in which you can perceive that to represent objectively that he was lunging toward Deputy Cushel. Again, he's found up at the top of the stairs with his head toward the top and feet toward Deputy Cushel. So again, objectively, his description of the incident is absolutely unsubstantiated by any of the objective evidence. And the court, Judge Goschel, did a fantastic job of analyzing the evidence. She indicated that when you think about Robert Peltz coming down the stairs, his hands could be seen. When you think about the fact that Rekia is standing next to Deputy Cushel and describing her brother's hands up and open. His mother is describing the hands up and open. If you view the facts in a light most favorable to the plaintiff, this is an unreasonable use of force to seize. Trevon Johnson. Mr. Rogers, just now Mr. Alfonso said that Officer Cushel was, I guess, handling or not detaining or doing something with someone else as Trevon or Trevon was coming down the stairs. Do we have that in this record, this fact? Deputy Cushel is describing Robert Peltz descending the stairs and him attempting to pat him down when he sees out of the corner of his eye someone come around. But it's undisputed that he called Trevon down the stairs. Trevon is complying with his instructions to come down the stairs. Again, hands up, palms facing. There's no allegation of any threatening movement. The suggestion that if he tripped was threatening is undisputed, that he was backwards. He was in no way perceived to be lunging when you objectively review the evidence. So a broader question then. If there is, as the district court found, a genuine dispute of material fact here, doesn't this court lack jurisdiction to hear this appeal? I respectfully agree with that. I think that the court determined that there were disputed facts and there is no legitimate basis for an instant appeal. Finally, I would add that I believe that the counsel is raising the argument that there is no similarly analogous case. And I would suggest on three bases there's clearly established law on this point. One is Graham and Garner are clear that a person has a constitutional right not to be shot unless an officer has reasonable belief that he poses a threat to the officer or someone else. So that's a general proposition that's in Supreme Court law. Secondly, we cited some specific cases, one of which is Becker v. Erflich, which is 821F3920, where a gentleman is walking down the stairs being summoned by the officers. And the officer grabs him and pulls him down the stairs, allows his dog to attack him. He rips the muscle out of his lower extremity. And that was deemed to be a case where qualified immunity was not appropriate. Secondly, we cite Ellis v. Winalda, 999F243, a Seventh Circuit case again, where a burglar throws a bag toward an officer. It actually is described as hitting the officer and runs away. And the officer fires and shoots him. Fires at him and shoots him in the back. That was deemed to be an unreasonable use of excessive force and deadly force because it was not reasonable once the bag is away to assume that he has any weapon. Those are unarmed individuals. Excuse me, I see my time is exhausted. You may finish. Those are two instances where unarmed individuals were shot by police officers. And they were deemed to be the use of excessive force. For these reasons, we'd ask that the Court affirm Judge Gasho's decision. Thank you, Mr. Rogers. Mr. Alfonso, we'll go back to you for rebuttal. Appellee's counsel just recently had discussed how it was indisputable that Trevon had his hands up and was proceeding down the stairs slowly. However, plaintiff's own witnesses have stated that at the time that Trevon tripped towards the detective or down the stairs, Cushel was in the process of patting down Mr. Peltz. Now, from the position that Cushel was in, he perceived a sudden unexpected movement from a suspect that he had reports was violent towards a victim that was standing directly next to him. Under those circumstances, which are undisputed, even if it was a trip, these circumstances are not similar to any precedent cited by any other party or the Court. Mr. Johnson was not suicidal. There was no reports that he was running away. Mr. Alfonso, this is maybe apropos of nothing, but why was he patting down Mr. Peltz who had announced that he was the brother and Officer Cushel knew he was not the suspect? It is police policy to conduct a routine safety check for anybody on the scene. So did he pat down the grandfather who was on the first floor and Ms. Jones? As he entered, he spoke to the grandfather briefly and then Ms. Jones took his attention by screaming, he's upstairs, go get him. She was very animated at that time based upon the record. As recently as October of this year, the Supreme Court in City of Toledo, Oklahoma v. Austin P. Bond and Daniel Villegas v. Ron Cordes Luna has again stated in no uncertain terms that specifics matter in these cases, that the rule must be so well defined that it is clear to every reasonable officer that this conduct was unlawful in the situation he confronted. Thank you, Mr. Alfonso. Thank you, Judge. Thank you, Mr. Rogers as well. The case will be taken under revisement. The court is going to take a five-minute break and then we'll recommence with the Starks case.